

Signed/Docketed
November 9, 2012

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLORADO
### The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 11-29774-MER |
| GEOFFREY WESCOTT JAMES ) | |
| NANCY MAUREEN JAMES ) | Chapter 7 |
| ) | |
|     Debtor. ) | |
| ) | |
| ) | |
| UMPQUA BANK ) | Adversary No. 11-1923-MER |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| GEOFFREY WESCOTT JAMES ) | |
| ) | |
|     Defendant. ) | |

### ORDER DENYING MOTION TO TRANSFER VENUE

THIS MATTER comes before the Court on the *Motion to Transfer Venue to United States District Court for the Western District of Washington* ("Motion to Transfer Venue") filed by Plaintiff Umpqua Bank ("Umpqua"), and the *Defendant's Objection to Plaintiff's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412* ("Objection") filed by Defendant Geoffrey Wescott James ("James").[1] The Court has considered the pleadings and the legal arguments presented by counsel for the parties at oral argument, and hereby finds and concludes as follows.

### JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157.[2] This is a core proceeding under § 157(b)(2)(I) because it involves determinations as to the dischargeability of particular debts.

---

[1] James also filed an *Affidavit of Geoffrey Westcott James in Support of Defendant's Objection to Plaintiff's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1412* (Docket No. 29) with exhibits.

[2] Unless otherwise noted, all future statutory references in the text are to Title 28 of the United States Code.

## BACKGROUND[3]

Wescott Development LLC ("Wescott Development") is a Washington limited liability company with its principal place of business in Seattle, Washington. James formed Wescott Development in 2006, as its sole member and manager. From 2006 to 2007, EvergreenBank ("Evergreen") made construction loans to Wescott Development in connection with certain residential real estate development projects. James personally guaranteed the related construction loans.

Wescott Development and James subsequently breached the terms of the applicable loan documents. After these defaults, Evergreen initiated an action against James, co-debtor Nancy Maureen James and Westcott Development in the Superior Court of the State of Washington, King County, styled *EvergreenBank v. Geoffrey W. James, et al.*, Case No. 08-2-32594-6SEA (the "State Court Action"). On May 14, 2009, Evergreen, the Debtors and Westcott Development entered into a Settlement Agreement to resolve the State Court Action by stipulated judgment. On June 2, 2009, the state court entered a stipulated judgment in favor of Evergreen against the Debtors and Wescott Development (the "Stipulated Judgment"). Evergreen was subsequently closed by the Washington Department of Financial Institutions, and the FDIC was named as receiver.

On August 18, 2011, the Debtors filed their voluntary petition for relief under Chapter 7 of the Bankruptcy Code. According to their Voluntary Petition, the Debtors are residents of the State of Colorado. Four days *after* the petition date, the FDIC executed an Assignment of Stipulated Judgment, assigning its rights under the Stipulated Judgment to Umpqua. On November 22, 2011, Umpqua commenced the instant adversary proceeding by filing its Complaint against James.[4]

On January 31, 2012, Umpqua filed a First Amended Complaint,[5] and in response, James filed his Motion to Dismiss the First Amended Complaint. On March 19, 2012, the parties filed their Unopposed Stipulated Joint Motion to Establish Procedures and Schedule Regarding Defendant's Motion to Dismiss First Amended Complaint. The Court granted this motion, and ordered Umpqua

---

[3] The background facts provided in this Order are based upon the representations of counsel at oral arguments, James' admission of certain allegations set forth in Umpqua's Second Amended Complaint, the Motion to Transfer Venue and the Objection thereto.

[4] Complaint, Docket No. 1.

[5] First Amended Complaint, Docket No. 12.

to file a second amended complaint.[6]  On April 9, 2012, Umpqua filed its Second Amended Complaint, seeking an order excepting James' obligations arising from the Stipulated Judgment from discharge under 11 U.S.C. § 523(a)(2)(A) and (a)(6).  On May 1, 2012, James filed his Answer to Second Amended Complaint, admitting venue is proper in this Court.[7]

Following the trial scheduling conference where counsel for both parties participated, the Court entered its Order Regarding Discovery Schedule and Notice of Trial Scheduling Conference ("Scheduling Order") on June 28, 2012.[8]  Pursuant to the Scheduling Order, the parties exchanged their initial disclosures under FED. R. CIV. P. 26(a)(1), as incorporated by FED. R. BANKR. P. 7026(a)(1), each disclosing *inter alia* certain individuals who may have discoverable information.  On July 11, 2012, James propounded written discovery and served Umpqua with a notice of deposition.[9]  James agreed to travel to Seattle, Washington to take the deposition(s) of Umpqua's representatives.

On July 30, 2012, Umpqua filed its Motion to Transfer Venue, requesting this Court transfer venue to the United States Bankruptcy Court for the Western District of Washington pursuant to 28 U.S.C. § 1412 for "convenience of the parties."  Umpqua asserts a transfer of venue is proper because the relevant communications, representations and acts of James occurred in the State of Washington, and the dispute concerns documents and properties in Washington.  Umpqua further alleges the majority of potential witnesses reside in Washington, except for James and one other individual.

In his Objection, James asserts the following factors weigh against transferring venue:  1) Umpqua failed to attach any supporting affidavits to the Motion to Transfer Venue; 2) the individuals disclosed in James' initial disclosures are not witnesses for trial, but persons who may have discoverable information; 3) a transfer of venue would prejudice James, who has limited resources and is a resident of Colorado; 4) Umpqua initiated this proceeding in Colorado, admitted venue is proper in this Court, and has waived any challenge to venue; 5) Umpqua delayed seeking transfer of venue; and 6) this Court is familiar with the facts and issues in this proceeding, as well as related dischargeability actions against James.

---

[6] *See* Order Granting Unopposed Stipulated Joint Motion to Establish Procedures and Schedule Regarding Defendant's Motion to Dismiss, Docket No. 15.

[7] Answer, at ¶ 4.

[8] Scheduling Order, Docket No. 24.

[9] *See* Affidavit of Geoffrey Westcott James, Exhibits A and B, Docket No. 29.

## DISCUSSION

Venue in adversary proceedings is governed by 28 U.S.C. § 1409(a), which states a proceeding "arising in or related to a case under title 11 may be commenced in the district court in which such case is pending."[10] The underlying bankruptcy case and this adversary proceeding were filed in the District of Colorado, and therefore, venue is proper in this Court pursuant to § 1409(a).[11] More than eight months after Umpqua commenced this proceeding in Colorado, it now seeks a transfer of this proceeding pursuant to 28 U.S.C. § 1412, asserting venue is "more proper" in the Western District of Washington.

This adversary proceeding is a core proceeding and therefore, falls under § 1412, which provides "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[12] Transfer of venue is within the Court's sound discretion, and the moving party must establish its burden by a preponderance of the evidence.[13] The Court's discretion is based on "an individualized, case-by-case consideration of convenience and fairness."[14] "Transferring venue of a bankruptcy case is not to be taken lightly."[15]

Courts consider substantially the same factors to determine a transfer of venue under § 1412 as a transfer under § 1404(a).[16] In *Harwell*, another

---

[10] § 1409(a).

[11] The parties do not dispute the Court's jurisdiction or that venue is proper in this Court. *See* Second Amended Complaint, at ¶ 2-4; Answer, at ¶ 2-4.

[12] 28 U.S.C. § 1412; *see also Martinez v. Hutton (In re Harwell)*, 381 B.R. 885, 892, n. 10 (Bankr. D. Colo. 2008) (finding venue transfer of a "related to" proceeding to be governed by 28 U.S.C. § 1412).

[13] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991).

[14] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612 (1964)).

[15] *In re Condor Exploration, LLC*, 294 B.R. 370, 377 (Bankr. D. Colo. 2003) (citing *In re Enron*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002)).

[16] 28 U.S.C. § 1404(a) governs the transfer of venue of non-bankruptcy related cases. *See generally Harwell*, 381 B.R. 885. The *Harwell* matter involved an adversary proceeding filed in Colorado by the Colorado bankruptcy trustee against defendants residing in Florida. The trustee asserted claims against the defendants to avoid and recover transfers as fraudulent transfers and/or preferential payments, and claims under Florida law for aiding and abetting fraudulent transfers, civil conspiracy, and legal malpractice. The *Harwell* Court granted the defendants' motion to transfer venue, noting the potential significance of Florida law to the claims under state law. The Court finds the instant matter is factually

division of this Court isolated the following factors as a framework to determine whether a change of venue is proper in the context of adversary proceedings in bankruptcy:

> (1) the economic administration of the bankruptcy estate; (2) the presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending; (3) judicial efficiency; (4) ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders; (6) enforceability of any judgment rendered; and (7) the [presumption in favor of] plaintiff's original choice of forum. *Shaver v. Orthodontic Centers of Colorado, Inc.*, 2007 WL 38665 * 2 (D. Colo. 2007), citing *Blanton v. IMN Financial Corp.*, 260 B.R. 257, 267 (M.D.N.C. 2001).[17]

The Court finds these factors instructive, and shall balance these factors in addition to the other factors raised by the parties.

### A.  Bankruptcy Case Locale and Choice of Forum Presumptions

In determining motions to transfer venue, "there is a presumption that the proper venue for a proceeding is the district in which the underlying bankruptcy case is pending. On the other hand, there is also a 'strong presumption in favor of the Plaintiff's choice of forum.'"[18] Typically, these

---

distinguishable because Umpqua only asserts two claims for relief under 11 U.S.C. § 523 and no state law claims, and Umpqua is the party seeking a change in venue.

[17] *Harwell*, 381 B.R. at 892. The *Harwell* Court also identified the following factors as relevant in a § 1412 analysis:

- The plaintiff's choice of forum;
- The accessibility of witnesses and other sources of proof;
- The cost of making the necessary proof;
- The enforceability of any judgment obtained;
- Any advantages or obstacles to a fair trial;
- The overcrowding of dockets;
- Possible conflict of laws;
- The advantage of having a local court determine questions of local law; and
- Other considerations making a trial easy, expeditious and economical.

*Harwell*, 381 B.R. at 891-92 (*citing Chrysler Credit Corp.*, 928 F.2d at 1516).

[18] *Shaver v. Orthodontic Centers of Colorado, Inc.*, 2007 WL 38665, at *2 (D. Colo. Jan. 4, 2007) (internal citations omitted). *See also Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992) (the plaintiff's choice of forum ordinarily is entitled to deference); *Official Comm. of Asbestos Claimants of G-I Holding, Inc. v Heyman*, 306 B.R. 746, 749 (Bankr. S.D.N.Y. 2004) (district in which underlying bankruptcy case is pending is presumed to be appropriate district for hearing and determination of proceeding in bankruptcy); *In re Windsor Communications Group, Inc.*, 53 B.R. 293, 296 (Bankr. E.D. Pa. 1985) (stating "there is a

presumptions are at odds with each other. Here, however, the relief requested in the Motion to Transfer Venue is unique because Umpqua is seeking the change of venue, rather than James. Accordingly, the presumptions coincide.

First, there is a presumption in favor of trying cases "related to" a bankruptcy case in the court in which the bankruptcy is pending. Herein, the Debtors moved from Washington to Colorado in 2009 because Mrs. James obtained employment and the Debtors were expecting their first child. They have resided in Colorado continuously since 2009, more than the required 180 days, and filed for bankruptcy relief in Colorado. There is no question the Debtors' bankruptcy case is properly pending before this Court. Thus, this Court is presumed to be the appropriate district for hearing and determination of this adversary proceeding.

Second, regarding Umpqua's original choice of forum, Umpqua filed its adversary complaint with this Court. The Court notes on three prior occasions Umpqua represented in writing that "[v]enue is proper in this Court pursuant to 28 U.S.C. § 1409(a)."[19] Further, Umpqua did not seek a transfer of venue until eight months after commencing this action, filing two amended complaints and attending the scheduling conference before this Court. Umpqua originally chose this forum, and this Court is presumed to be the proper forum to adjudicate this matter. Therefore, the Court finds both presumptions support denial of the Motion to Transfer Venue.

**B.    Economic Administration, Judicial Efficiency and a Fair Trial**

In considering the convenience of the parties, "the factor given the most weight is the promotion of the economic and efficient administration of the estate."[20] This Court has no doubt a bankruptcy court in Washington could determine the dischargeability claims at issue, and the Court believes a fair trial could be held in the bankruptcy courts of either Washington or Colorado.

However, this Court is familiar with the facts and claims in the Debtors' underlying bankruptcy case, this adversary proceeding, and the three other non-dischargeability actions filed against James.[21] The Court has held a scheduling conference and oral arguments in this matter, and the parties are

---

strong presumption of maintaining venue where the bankruptcy case is pending.").

[19] Complaint, at ¶ 4; First Amended Complaint, at ¶ 4; Second Amended Complaint, at ¶ 4.

[20] *Condor Exploration*, 294 B.R. at 378.

[21] *Martin v. James*, Adv. Proc. No. 11-01830-MER (dismissed with prejudice on August 14, 2012 by stipulation of the parties); *Sundaram v. James*, Adv. Proc. No. 11-01837-MER; and *Mousseau v. James*, Adv. Proc. No. 11-01922-MER.

engaged in discovery. The Court believes transferring this single proceeding to another bankruptcy court would delay resolution of this proceeding, and would force James to defend one action in Washington and two additional pending adversary proceedings in this Court. The most economic, efficient and fair course of action is to keep all dischargeability matters under one roof. Therefore, the Court finds these three factors weigh in favor of this Court adjudicating the merits of Umpqua's dischargeability claims.

### C.    State's Interest

The Stipulated Judgment entered in Washington is final, thereby protecting that State's interest in deciding the underlying liability within its borders. In support of its request, Umpqua relies heavily on the fact the communications, representations and actions of James occurred in the State of Washington, and concerned properties in that locale. While it is true the Stipulated Judgment involved claims under Washington law, the issue before this Court is whether the obligations of James under the Stipulated Judgment are dischargeable. The dischargeability determination in this proceeding does not require the application of Washington law. This Court is well-versed in applying bankruptcy law to the issue of dischargeability of a debt, and therefore, this factor weighs in favor of adjudicating the adversary proceeding here.

### D.    Enforceability of Judgment

Umpqua has not presented any evidence regarding enforceability of a judgment rendered by this Court. However, it is undisputed James is a resident of Colorado, and the enforcement of any judgment would indeed be a creature of Colorado law involving James' assets which are located in Colorado. While it is true Umpqua could domesticate a foreign judgment in Colorado, enforceability of a judgment issued by this Court would present fewer procedural hurdles.

### E.    The Accessibility of Witnesses and Other Sources of Proof

Umpqua primarily argues a transfer of venue is proper because all of the "witnesses" disclosed by the parties reside in Washington, with the exception of James, his wife and one individual residing in Alaska.[22] However, the parties have only exchanged initial disclosures containing lists of individuals likely to have discoverable information, not final witnesses for trial. It is premature to assume the parties will call each and every individual disclosed in their respective initial disclosures. Further, James has agreed to travel to Washington to depose the designated representatives of Umpqua to avoid having any potential witnesses travel to Colorado prior to trial.

---

[22] *Motion to Transfer Venue*, Docket No. 72 at p.4.

With respect to the production of documents, Umpqua has not identified any documents that could not be produced in Colorado for trial. After reviewing the list of documents disclosed by Umpqua in its initial disclosures, the Court notes Umpqua discloses the loan documents, certain written communications, appraisals, budget reviews, state court pleadings and other documents. The Court is unpersuaded Umpqua does not have access to these documents which are purportedly in its possession. Further, Umpqua is not prejudiced with respect to accessability because Umpqua may access potential witnesses and documents in Washington without the need to change venue. Accordingly, the Court finds this factor does not support granting the Motion to Transfer Venue.

**F.     Cost of Making the Necessary Proof**

The Court has no evidence before it as to the relative means of Umpqua, but James argues a transfer of venue would create a financial burden upon him and his family. The Court agrees. Three other creditors from Washington filed separate non-dischargeability complaints against James in Colorado,[23] one of which has now been dismissed. Venue in Colorado was not challenged in any of those other actions, and the Court believes requiring James to fund defenses to non-dischargeability actions on two fronts would unfairly prejudice him. Cost to a debtor-defendant is a significant factor when the transfer of venue is sought in an adversary proceeding.[24] There is no evidence before the Court to suggest how a transfer would affect other costs of litigation. Therefore, the Court finds this factor weighs in favor of no change in venue.

**G.     Difficulties that May Arise from Congested Dockets**

There is no evidence as to the relative crowding of dockets in Colorado or Washington federal courts. Umpqua expressed a belief the case could be tried in five days. On the representations of counsel for the parties, the Court set deadlines for expert witnesses, discovery and dispositive motions, and scheduled the trial scheduling conference for April 23, 2013. Umpqua has not offered any estimation or documentation regarding whether a bankruptcy Court in Washington could would complete a trial before the deadlines requested by the parties in this case.

---

[23] *Martin v. Geoffrey James*, Adv. Proc. No. 11-01830-MER (dismissed with prejudice on August 14, 2012 by stipulation of the parties); *Sundaram v. Geoffrey James*, Adv. Proc. No. 11-01837-MER; and *Mousseau v. Geoffrey James*, Adv. Proc. No. 11-01922-MER.

[24] *See In re Hershkovitz*, 101 B.R. 816, 819-20 (Bankr. N.D. Ga. 1989) (denying plaintiff's motion for change of venue and holding "although the Court is somewhat sympathetic to the Plaintiffs' burden in litigating the dischargeability complaint in the Northern District of Georgia, it cannot override the great burden it would place upon Defendant–Debtors to litigate the matter in the Eastern District of Michigan.").

## CONCLUSION

The Court concludes Umpqua has not satisfied its burden of establishing a change in venue is proper. Umpqua failed to overcome the presumptions in favor of this Court adjudicating this proceeding. In balancing the factors above, the Court finds the weight of the factors establishes a change of venue is improper for convenience of the parties. Accordingly, the Court finds under 28 U.S.C. § 1412, transfer of this adversary proceeding to the Western District of Washington is inappropriate. For the foregoing reasons,

IT IS ORDERED the *Motion to Transfer Venue to United States District Court for the Western District of Washington* (Docket No. 27) filed by Umpqua Bank is DENIED. All provisions of the Court's Scheduling Order dated June 28, 2012 (Docket No. 24) remain in full force and effect unless otherwise amended by further order of the Court.

Dated November 9, 2012               BY THE COURT:

_____
Michael E. Romero
United States Bankruptcy Judge